FILED by ___NF___ D.C.

**Jun 29, 2020**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 20-80054-CR-ALTMAN/BRANNON

CASE NO._____

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

ALEXANDER ROBERT XAVIER,
TIMOTHY CASTRACANE,
    a/k/a "Guy Castracane,"
ROBERT MICHAEL WANN, and
HENRY JOHN HATTENDORF,

        Defendants.

_____/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

### The Defendants

1.      Defendant **ALEXANDER ROBERT XAVIER** was a resident of the State of Florida.

2.      Defendant **TIMOTHY CASTRACANE, a/k/a "Guy Castracane,"** was a resident of the State of New York.

3.      Defendant **ROBERT MICHAEL WANN** was a resident of the State of

Washington.

4.      Defendant **HENRY JOHN HATTENDORF** was a resident of the State of Texas.

### The Defendants' Entities

5.      Hampton Investment Fund was a Delaware Statutory Trust formed on or about October 3, 2013, with a business address located in Palm Beach County, Florida. At various times, **ALEXANDER ROBERT XAVIER** was a "Managing Director" of Hampton Investment Fund and **TIMOTHY CASTRACANE** was a "Director," "Executive Managing Director," and "Managing Member."

6.      CMH Secure Trust was a Delaware Statutory Trust formed on or about January 2, 2014, with a business address located in Palm Beach County, Florida. At various times, **TIMOTHY CASTRACANE** was a "Director" and "Managing Member" of CMH Secure Trust.

7.      CMH Secure, LLC was a Nevada domestic limited-liability company incorporated on or about May 20, 2013, with a business address located in Palm Beach County, Florida. **TIMOTHY CASTRACANE** was a "Managing Member" of CMH Secure, LLC.

8.      Newland Holdings and Investments, Inc. was a Nevada company incorporated on or about May 31, 2012, with a business address located in Orange County, California. At various times, **ROBERT MICHAEL WANN** was the "Chairman," "President," and "Director" of Newland Holdings and Investments, Inc.

9.      Equus Terram Investment Group was a Delaware Statutory Trust formed on or about February 7, 2014, with a business address located in New York, New York.

10.     Frumist Investment Trust was a Delaware Statutory Trust formed on or about January 7, 2015, with a business address located in New York, New York.

11.     The Noble Carpenter Foundation was a Delaware Statutory Trust formed on or

2

about February 7, 2014, with a business address located in Palm Beach County, Florida.

12.     Highland Secure Investment Trust was a Delaware Statutory Trust formed on or about May 4, 2015, with a business address located in New York, New York.

13.     Pharos Investment Fund was a Delaware Statutory Trust formed on or about February 10, 2014, with a business address located in Palm Beach County, Florida.

## The Victim Entities

14.     "KWM" was a "joint venture" representing a management and construction firm made up of three construction companies.

15.     "JHR" was a New Jersey general contracting company formed in or around 1963.

16.     "AMC" was a New York general contracting company formed in or around 2004.

17.     In or around May 2015, a Washington, D.C.-based religious organization hired AMC to convert office space located in New York City, New York, into residential housing.

## Construction Surety Bonds

18.     Contractors and subcontractors working on large construction projects are frequently required to purchase surety bonds, a form of insurance, in connection with their work on the projects. Performance and payment bonds are types of surety bonds.

19.     A performance bond guarantees that the contractor or subcontractor will perform the contract in accordance with the terms and conditions of the contract.

20.     A payment bond guarantees that the contractor or subcontractor will pay any subcontractors and suppliers that perform work under the contract.

21.     Performance and payment bonds guarantee performance and payment by giving the project owner a security interest in specified assets such as real estate or cash, which the project

owner can use if the contractor or subcontractor fails to perform the contract and/or fails to pay subcontractors and suppliers.

22.     In exchange for receiving a performance and payment bond, contractors and subcontractors pay a bond fee to the person or company that issued the performance and payment bonds.

23.     Persons and companies that issue performance and payment bonds are called "sureties."

<u>COUNT 1</u>
**Conspiracy to Commit Mail and Wire Fraud**
**(18 U.S.C. § 1349)**

1.     The General Allegations section of this Information is realleged and incorporated by reference as though fully set forth herein.

2.     From in or around March 2015, through in or around December 2015, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDER ROBERT XAVIER,**
**TIMOTHY CASTRACANE,**
**a/k/a "Guy Castracane,"**
**ROBERT MICHAEL WANN, and**
**HENRY JOHN HATTENDORF,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to the United States Attorney, to commit the following offenses:

(a)     to knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and

4

promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice, and attempting to do so, did knowingly cause to be delivered certain mail matter by Federal Express ("FedEx"), a private and commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341; and

(b)     to knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.     It was a purpose of the conspiracy for the defendants to unlawfully enrich themselves by obtaining payments from construction companies in exchange for issuing purportedly valuable surety bonds that were, in fact, secured by worthless "gold certificates."

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among other things, the following:

### Worthless Gold Certificates

4.     In or around March 2015, **TIMOTHY CASTRACANE** contacted a lawyer with the initials "T.B." **CASTRACANE** asked T.B. to help **CASTRACANE** deposit "gold certificates" into bank accounts in order to issue surety bonds for construction projects in New York, New Jersey, and elsewhere.

5.     **TIMOTHY CASTRACANE, ROBERT MICHAEL WANN**, and **HENRY JOHN HATTENDORF** sent several gold certificates to T.B. via email using interstate wires and FedEx. Each gold certificate purported to be "in the amount of" at least $1,000,000,000.00 ($1 Billion Dollars). The gold certificates were issued by **ROBERT MICHAEL WANN** as chairman of Newland Holdings and Investments, Inc. and had no actual value.

6.     T.B. agreed to act as a trustee on behalf of Hampton Investment Fund and sign a letter in that capacity. In the letter, T.B. stated that he had set aside cash, cash equivalents, and/or other readily marketable assets in support of a $22,980,000.00 payment and performance bond issued to JHR (Bond Number 0315J076H21-01). In making this representation, T.B. relied on the gold certificates and information provided to him by **TIMOTHY CASTRACANE, ROBERT MICHAEL WANN**, and **HENRY JOHN HATTENDORF**.

### Fraudulent Surety Bonds

7.     On or about March 21, 2015, **ALEXANDER ROBERT XAVIER**, acting as an individual surety and on behalf of Hampton Investment Fund, issued a $22,980,000.00 payment and performance bond to JHR (Bond Number 0315J076H21-01). The bond named JHR as the contractor and KWM as the owner. In support of the bond, **XAVIER** signed an affidavit of individual surety, in which **XAVIER** declared under oath that there were $22,980,000.00 in cash and/or cash equivalents in T.B.'s attorney-trust account. As proof, **XAVIER** attached T.B.'s trustee letter. The bond documents were sent to New York from Florida via Federal Express.

8.     In exchange for the fraudulent payment and performance bonds, KWM and JHR paid over $919,000.00 to the defendants. KWM and JHR paid the bonding fees in installments.

9.      On or about April 1, 2015, T.B. told **TIMOTHY CASTRACANE** that T.B. was unable to authenticate the gold certificates. T.B. further stated that the gold certificates could not be designated as cash, cash equivalents, or readily marketable assets.

10.     On or about June 4, 2015, S.C., a business associate of **TIMOTHY CASTRACANE** and **ALEXANDER ROBERT XAVIER**, sent an e-mail using interstate wires to T.B. Attached to the e-mail were documents related to payment and performance bonds in the amount of $6,464,343.00. The bonds named AMC as the contractor and a Washington, D.C.-based religious organization as the owner. Included among these documents was a trustee letter for T.B.'s signature.

11.     On or about June 4, 2015, T.B. told **TIMOTHY CASTRACANE** that T.B. would not sign the trustee letter attached to the bonds naming AMC as the contractor. T.B. further advised **CASTRACANE** that T.B. intended to resign as trustee.

12.     On or about June 5, 2015, **ALEXANDER ROBERT XAVIER** sent a letter to a representative of AMC, in which **XAVIER** falsely stated that he had "moved the necessary funds" and was "preparing the final Payment & Performance Bonds in the amount of $6,464,343.00." **XAVIER** promised to complete the payment and performance bonds by the beginning of the following week.

13.     On or about June 8, 2015, **ALEXANDER ROBERT XAVIER**, acting as an individual surety and on behalf of Hampton Investment Fund, issued a $6,464,343.00 payment and performance bond to AMC (Bond Number 0515A012M25-01). In support of the bonds, **XAVIER** signed an affidavit of individual surety declaring under oath that there were $6,464,343.00 in cash and/or cash equivalents in T.B.'s attorney-trust account. No trustee letter was attached because T.B. refused to sign it. Instead, **XAVIER** attached a "letter of credit" claiming Hampton

Investment Fund had received cash, cash equivalents and/or readily marketable assets with a value of $6,464,343.00. According to the letter of credit, these assets would be held in T.B.'s attorney-trust account.

14.     In exchange for the fraudulent payment and performance bonds, AMC paid over $323,000.00 to a New York lawyer, who subsequently disbursed the money to the defendants and their entities.  AMC paid the bonding fees in installments.

15.     On or about June 9, 2015, T.B. sent a letter to **TIMOTHY CASTRACANE**, via e-mail using interstate wires, in which T.B. again stated he would not sign the trustee letter related to the AMC project. T.B. further stated the gold certificates in his possession were worthless. T.B. threatened to resign as trustee and withdraw the JHR trustee letter unless T.B. received $22,980,000.00 in "cash, cash equivalents and/or readily marketable assets" to cover the bonds issued to JHR.

16.     On or about July 28, 2015, T.B. sent a letter to **TIMOTHY CASTRACANE**, in which T.B. formally resigned as trustee for Hampton Investment Fund and CMH Secure Trust. T.B. further asked **CASTRACANE** where T.B. should send the worthless gold certificates.

17.     Following T.B.'s formal resignation, the defendants continued to mislead KWM and JHR and collect payments in exchange for the fraudulent surety bonds, including two (2) $70,000.00 payments from JHR on October 5, 2015, and October 30, 2015, respectively. The majority of that money was quickly transferred to a Wells Fargo Bank account opened in the name of CMH Secure Trust.

### Concealment and Omission of Material Facts and Materially False Statements

18.     In order to trick KWM, JHR, and AMC into paying for surety bonds, **ALEXANDER ROBERT XAVIER, TIMOTHY CASTRACANE, ROBERT MICHAEL**

WANN, and **HENRY JOHN HATTENDORF** made, and caused others to make, numerous materially false and fraudulent statements and concealed and omitted to state, and caused others to conceal and omit to state, material facts, related to, among other things:

    (a)    the value and authenticity of the gold certificates provided to T.B. by **CASTRACANE, WANN**, and **HATTENDORF**;

    (b)    the nature and value of the "assets" purportedly held by T.B.;

    (c)    T.B.'s refusal to sign a trustee letter;

    (d)    T.B.'s resignation as trustee;

    (e)    the nature and value of the "assets" pledged in support of the surety bonds issued by **XAVIER**; and

    (f)    **WANN**'s criminal history and prior forgery offenses.

19.    Over the course of the scheme, **ALEXANDER ROBERT XAVIER, TIMOTHY CASTRACANE, ROBERT MICHAEL WANN**, and **HENRY JOHN HATTENDORF** falsely and fraudulently caused KWM, JHR, and AMC to pay approximately $1,242,000.00 in bonding fees to the defendants and their entities.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-6
### Wire Fraud
### (18 U.S.C. § 1343)

1.    The General Allegations section of this Information is realleged and incorporated by reference as though fully set forth herein.

2.    From in or around March 2015, through in or around December 2015, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDER ROBERT XAVIER,**
**TIMOTHY CASTRACANE,**
**a/k/a "Guy Castracane,"**
**ROBERT MICHAEL WANN, and**
**HENRY JOHN HATTENDORF,**

did knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

### THE PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was a purpose of the scheme and artifice for the defendants to unlawfully enrich themselves by obtaining payments from construction companies in exchange for issuing purportedly valuable surety bonds that were, in fact, secured by worthless "gold certificates."

### THE SCHEME AND ARTIFICE

4.      The Manner and Means section of Count 1 is realleged and incorporated herein as a description of the scheme and artifice.

### USE OF THE WIRES

5.      On or about the dates specified as to each count below, the defendants, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, as more particularly described in each count below:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE |
|:-----:|:------------:|---------------------|
| 2 | July 22, 2015 | E-mail from **ALEXANDER ROBERT XAVIER**, located in South Florida, to B.H., a representative of KWM, located in New Jersey, and others, stating: "we have reached out to the Trustee of Hampton Investment Fund" |
| 3 | July 26, 2015 | E-mail from **ALEXANDER ROBERT XAVIER**, located in South Florida, to B.H., a representative of KWM, located in New Jersey, forwarding an e-mail from **TIMOTHY CASTRACANE**, stating: "Perhaps [KWM] does not understand, but we are at the height of vacation season, since the banks shut down from the end of June to the end of August. In turn the Trust's attorney and trustee are not easily available as usual" |
| 4 | August 3, 2015 | E-mail from **ALEXANDER ROBERT XAVIER**, located in South Florida, to B.H., a representative of KWM, located in New York, stating: "I have forwarded your letter and comments, in regards to the Goethals Bridge Bond, to the trust and they in turn have passed it on to their counsel" |
| 5 | October 7, 2015 | Wire transfer in the approximate amount of $53,958 from a law firm's trust account at J.P. Morgan Chase Bank (ending in 8465), located in New York, to CMH Secure Trust's Wells Fargo Bank account (ending in 1384), located in South Florida |
| 6 | November 4, 2015 | Wire transfer in the approximate amount of $53,341 from a law firm's trust account at J.P. Morgan Chase Bank (ending in 8465), located in New York, to CMH Secure Trust's Wells Fargo Bank account (ending in 1384), located in South Florida |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 7
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.    The General Allegations section of this Information is realleged and incorporated by reference as though fully set forth herein.

2.      From in or around March 2015, through in or around December 2015, in Palm Beach, Martin, and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDER ROBERT XAVIER,**
**TIMOTHY CASTRACANE,**
**a/k/a "Guy Castracane,"**
**ROBERT MICHAEL WANN, and**
**HENRY JOHN HATTENDORF,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to the United States Attorney to commit certain offenses against the United States, that is:

(a)      to conduct financial transactions involving the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b)      to engage in monetary transactions by, through, and to financial institutions, affecting interstate and foreign commerce, such transactions involving criminally derived property of a value greater than $10,000 and such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE
### (18 U.S.C. §§ 981(a)(1)(C), 982(a)(1))

1.      The allegations of this Information are re-alleged and incorporated herein for the purpose of alleging forfeiture to the United States of America of property in which the defendants, **ALEXANDER ROBERT XAVIER, TIMOTHY CASTRACANE, a/k/a "Guy Castracane," ROBERT MICHAEL WANN**, and **HENRY JOHN HATTENDORF**, have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1343, or conspiracy to commit such offense, as alleged in this Information, the defendants each shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Information, the defendants shall each forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).


ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY


CHRISTOPHER B. BROWNE
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

Alexander Robert Xavier, et al.

_____Defendants._____/

CASE NO._____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

Court Division: (Select One)

|  | Miami |  | Key West |
|---|---|---|---|
|  | FTL | ✓ | WPB | FTP |

New defendant(s)              Yes _____   No _____
Number of new defendants     _____
Total number of counts        _____

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:      (Yes or No)     No
    List language and/or dialect      _____

4.  This case will take _14_ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                          (Check only one)

| I | 0 to 5 days | _____ | Petty | _____ |
|---|---|---|---|---|
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | ✓ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | ✓ |
| V | 61 days and over | _____ | | |

6.  Has this case previously been filed in this District Court?      (Yes or No)     No
    If yes: Judge _____  Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?      (Yes or No)     No
    If yes: Magistrate Case No. _____
    Related miscellaneous numbers: _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of _____
    Rule 20 from the District of _____

    Is this a potential death penalty case? (Yes or No)     No

7.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?      Yes _____   No ✓

8.  Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?      Yes _____   No ✓

_____
CHRISTOPHER B. BROWNE
ASSISTANT UNITED STATES ATTORNEY
FL Bar No. 91337

*Penalty Sheet(s) attached

REV 8/13/2018

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:** ALEXANDER ROBERT XAVIER

**Case No:** _____

Count #: 1

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**          Twenty (20) years' imprisonment

Counts #: 2-6

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:**          Twenty (20) years' imprisonment, as to each count

Count #: 7

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**          Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** TIMOTHY CASTRACANE

**Case No:**

Count #: 1

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**          Twenty (20) years' imprisonment

Counts #: 2-6

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:**          Twenty (20) years' imprisonment, as to each count

Count #: 7

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**          Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: HENRY JOHN HATTENDORF

**Case No**: _____

Count #: 1

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          Twenty (20) years' imprisonment

Counts #: 2-6

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:**          Twenty (20) years' imprisonment, as to each count

Count #: 7

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**          Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: ROBERT MICHAEL WANN

**Case No**: _____

Count #: 1

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:**          Twenty (20) years' imprisonment

Counts #: 2-6

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:**          Twenty (20) years' imprisonment, as to each count

Count #: 7

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h)

**\*Max. Penalty:**          Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| Alexander Robert Xavier, et al. | ) | |
| | ) | |
| _Defendant_ | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
_Defendant's signature_

_____
_Signature of defendant's attorney_

_____
_Printed name of defendant's attorney_

_____
_Judge's signature_

_____
_Judge's printed name and title_